IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MULVEY CONSTRUCTION, INC.,
 et al.,

    Plaintiffs,


v.                                    CIVIL ACTION NO. 1:07-0634


BITUMINOUS CASUALTY CORP.,
et al.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the motion for summary
judgment filed by defendant Bituminous Casualty Corporation (doc.
# 68).  For the reasons set forth below, the motion is **GRANTED** in
part and **DENIED** in part.

### Factual Background

McDonald's retained Mulvey Construction, Inc.
("Mulvey"), a New York corporation, to construct a McDonald's
restaurant in Bluefield, West Virginia.  Mulvey, in turn, entered
into a subcontract agreement with DCI/Shires, Inc., a local
contractor, to build a retaining wall and do other work on the
McDonald's project.  See Exhibit 2 to Defendant's Motion for
Summary Judgment.  DCI/Shires is a Virginia corporation.

Before the actual construction could begin and pursuant
to the terms of the subcontract agreement, DCI/Shires agreed to
place Mulvey and McDonald's on its insurance policy, issued by

Bituminous Casualty Corporation ("the DCI Policy"). To that end, DCI/Shires sent the subcontract agreement between itself and Mulvey to Brown & Brown Insurance Agency of Virginia, Inc., its insurance agent since the early 2000s. Brown & Brown is a Virginia corporation.

After receiving the request from DCI/Shires, Brown & Brown issued certificates of insurance. <u>See</u> Exhibit 3 to Defendant's Motion for Summary Judgment. According to the certificates of insurance, Mulvey and McDonald's were additional insureds on the DCI Policy. <u>Id.</u> According to the certificate of insurance, the "Certificate Holder is named as an additional insured in regard to the general liability policy." <u>Id.</u> The certificate of insurance also states that

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

<u>Id.</u> Brown & Brown contends that it sent the certificates to Bituminous but, for some reason, Mulvey and McDonalds were never added to the DCI Policy.

On January 3, 2003, Robert Blevins, an employee of the Sanitation Board of the City of Bluefield, responded to a complaint of a sewage line break at the McDonald's site. In order to repair the break, the Sanitary Board cut a trench in the middle of the road, next to the McDonald's restaurant. While Blevins was in the trench replacing the broken sewer pipe, a

section of concrete roadway and dirt sidewall fell on him. Blevins was killed as a result of the accident.

Blevins' wife, Rebecca Ann Blevins, individually and as executrix of his estate, filed a wrongful death action in the Circuit Court of Mercer County, West Virginia, against McDonald's, Mulvey, DCI/Shires, and others ("the Blevins action"). The Amended Complaint in the Blevins action alleges that the failure of a retaining wall at the McDonald's caused the break in the sewer line. <u>See</u> Exhibit 4 to Defendant's Motion for Summary Judgment. The Blevins Complaint also alleges that the retaining wall was negligently constructed. <u>Id.</u>

After the Blevins lawsuit was filed, on more than one occasion, both Mulvey and McDonald's requested that DCI/Shires assume their defense in the Blevins action. DCI/Shires and Mulvey denied the requests. According to Bituminous, neither Mulvey nor McDonald's were additional insureds on the Bituminous Policy. After a time, Mulvey and McDonald's paid $400,000.00 to settle the claims against them in the Blevins lawsuit. One Beacon Insurance Company ("One Beacon"), Mulvey's liability insurer, paid the amounts on behalf of McDonald's and Mulvey.

Invoking this court's diversity jurisdiction, on October 11, 2007,[1] Mulvey and One Beacon filed the instant lawsuit for declaratory judgment

---

[1] An amended complaint was filed on May 16, 2008.

3

seeking a declaration that: i) Mulvey is entitled to
primary insurance coverage from Bituminous as a named
insured; ii) Mulvey's subcontract agreement with DCI
Shires, Inc. ("DCI") is an insured contract under DCI's
Bituminous policy so that Mulvey stands in the shoes of
DCI for coverage purposes; iii) Bituminous owes Mulvey
a duty to indemnify and defend it as an additional
insured with an insured contract on its policy of
insurance covering DCI, from any and all claims arising
out of a 2003 accident which killed Robert Blevins; and
iv) that Mulvey is entitled to payment of any and all
settlements, defense costs, legal fees expended related
to the Blevins claims and to obtain the insurance
coverage it relied upon to award a job to DCI Shires,
Inc.

Amended Complaint ¶1.

Bituminous filed the instant motion for summary
judgment contending that it was entitled to judgment as a matter
of law because, under Virginia law, neither Mulvey nor McDonald's
were additional insureds under the DCI Policy.  Plaintiffs argue
that West Virginia law is applicable to the coverage
determination and, therefore, pursuant to <u>Marlin v. Wetzel County
Board of Educ</u>., 569 S.E. 2d 462 (W. Va. 2002), Mulvey was
entitled to coverage under the Bituminous Policy.  In the
alternative, plaintiffs contend that even if Virginia law
applies, summary judgment is not warranted.

### **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure
provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on
> file, together with the affidavits, if any,

4

show that there is no genuine issue as to any
material fact and that the moving party is
entitled to a judgment as a matter of law.

The moving party has the burden of establishing that
there is no genuine issue as to any material fact. Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by
showing that the nonmoving party has failed to prove an essential
element of the nonmoving party's case for which the nonmoving
party will bear the burden of proof at trial. Id. at 322. If
the moving party meets this burden, according to the United
States Supreme Court, "there can be 'no genuine issue as to any
material fact,' since a complete failure of proof concerning an
essential element of the nonmoving party's case necessarily
renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden
shifts to the nonmoving party to produce sufficient evidence for
a jury to return a verdict for that party.

The mere existence of a scintilla of evidence in
support of the plaintiff's position will be
insufficient; there must be evidence on which the
jury could reasonably find for the plaintiff.
The judge's inquiry, therefore, unavoidably asks
whether reasonable jurors could find, by a
preponderance of the evidence, that the plaintiff
is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If
the evidence is merely colorable, or is not significantly
probative, summary judgment may be granted." Id. at 250-51.

**Analysis**

A.      *Choice of Law*

       As a preliminary matter, the court must determine which
state's law of contract interpretation applies herein - West
Virginia or Virginia.  Bituminous contends that the court must
apply Virginia law because the Bituminous Policy was issued by a
Virginia corporation in Virginia to a Virginia corporation.  In
arguing that this court should apply West Virginia law,
plaintiffs contend that the court should look to the case of Penn
Coal Corp. v. McGee and Co., 903 F. Supp. 980 (S.D.W. Va. 1995),
and apply West Virginia law "because the risk insured was clearly
defined and was limited to only a construction site in West
Virginia."  Plaintiffs' Memorandum in Opposition at 12.

       When it exercises jurisdiction based on diversity of
citizenship, the court must apply the choice-of-law rules of the
state in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487, 496 (1941).  Under West Virginia law, "the
interpretation of insurance policy coverage, rather than
liability, is treated as a contract question for purposes of
conflicts analysis."  Liberty Mut. Ins. Co. v. Triangle Indus.,
Inc., 390 S.E.2d 562, 565 (W. Va. 1990).  West Virginia courts
have traditionally applied the doctrine of lex loci contractus
and held that the law of the state where the contract was made or

to have been performed governs the interpretation of the contract.  <u>Johnson v. Neal</u>, 418 S.E.2d 349, 341-52 (W. Va. 1992) (acknowledging West Virginia adheres to the "normal rule of applying in contract cases the ancient doctrine of lex loci contractus").

The court finds Judge Copenhaver's careful and thoughtful analysis in <u>Energy Corp. of America v. Bituminous Casualty Corp.</u>, 543 F. Supp.2d 536 (S.D.W. Va. 2008), instructive on the choice of law issue herein.  In that case, Energy Corporation of America had entered into a contract with S.W. Jack Drilling Company to drill wells in Kentucky, Pennsylvania, and West Virginia.  <u>Id.</u> at 538.  The contract required both Energy and S.W. Jack to obtain insurance coverage and name the other as an additional insured. <u>Id.</u>  To that end, S.W. Jack obtained a commercial general liability policy and a commercial umbrella liability policy from Bituminous.  <u>Id.</u>

After an S.W. Jack employee was killed while performing work pursuant to the contract between Energy Corporation and S.W. Jack, Energy Corporation demanded that Bituminous assume the defense of its subsidiary, Eastern American Energy Corporation, who was named as a defendant in the resulting wrongful death action.  <u>Id.</u> at 538-39.  Bituminous refused to do so and Eastern and Energy filed a complaint for declaratory judgment seeking a

7

declaration that Bituminous was obligated to defend Eastern in the wrongful death action.  Id. at 539.

In the declaratory judgment action, the parties disagreed as to whether West Virginia or Pennsylvania law applied.  Id. at 541-42.  Bituminous argued that the court should apply Pennsylvania law because the insurance policies were issued by a Pennsylvania broker in Pennsylvania to a Pennsylvania corporation.  Id. at 541.  Plaintiffs argued for application of West Virginia law for a number or reasons, including the fact that most of S.W. Jack's field employees worked in West Virginia and "S.W. Jack anticipated that the greatest amount of drilling during the policy period would be in West Virginia."  Id. at 541-42.

In undertaking his choice-of-law analysis, Judge Copenhaver discussed the case of Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562, 565 (W. Va. 1990).[2]  In that case, the Supreme Court of Appeals of West Virginia announced a new conflicts of law rule:

> [I]n a case involving the interpretation of an
> insurance policy, made in one state to be
> performed in another, the law of the state of
> formation of the contract shall govern, unless

---

[2] Relying on Section 6 of the Restatement (Second) of Conflict of Laws, the Triangle court held that the law of the state of contract, New Jersey, should apply to a commercial general liability policy covering risk in several states, including West Virginia.  Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562, 567 (W. Va. 1990).

8

> another state has a more significant relationship
> to the transaction and parties, or the law of the
> other state is contrary to the public policy of
> this state.

Id. Relying on Section 6 of the Restatement (Second) of Conflict

of Laws, the Triangle court considered a number of factors in

identifying the state with the most significant relationship,

including:

> (a) the needs of the interstate and international
> systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested
> states and the relative interests of those states
> in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular
> field of law,
>
> (f) certainty, predictability and uniformity of
> result, and
>
> (g) ease in the determination and application of
> the law to be applied.

Id. at 567.

Guided by the decision in Triangle and the Restatement §

6 factors, the Energy Corporation court stated:

> Applying th[e Triangle] rule, the court begins
> with the presumption that Pennsylvania law
> governs because the policies were issued in
> Pennsylvania.  Turning to the § 6 factors, the
> court concludes that no other state has a more
> significant relationship to the transaction and
> the parties than Pennsylvania.  As explained in
> Triangle Industries, application of the law of
> the state of formation ensures certainty,

9

> predictability, and uniformity of result and ease
> in the determination and application of the law
> to be applied.  Furthermore, the uniformity and
> predictability of this rule satisfy the needs of
> the interstate system of the insurance industry.
> Finally, application of this rule results in the
> selection of a single rule of law for the
> contract, and thus, the parties to the contract
> do not have to negotiate separate contracts for
> each state where an insured risk is located.

Energy Corp. at 543.  After determining that Pennsylvania's
contract interpretation principles were not contrary to the
public policy of West Virginia, the Energy Corporation court
decided that it should apply Pennsylvania law to the policy at
issue therein.  Id. at 543-44.

        Based upon the foregoing authorities,[3] the court
concludes that it should apply Virginia law to the policies
issued by Bituminous to DCI/Shires.  Because the policies were
issued in Virginia, the court begins with the presumption that
Virginia law applies.  No other state has a more significant
relationship to the transaction and the parties than Virginia.
Furthermore, the court does not find (nor do plaintiffs argue)
that the law of Virginia is contrary to the public policy of West
Virginia.  For all these reasons, the court will apply Virginia
law to the motion for summary judgment.

---

        [3] For the reasons stated by the courts in Energy Corp., see
543 F. Supp.2d at 543 n.1, and APAC-Atlantic, Inc. v. Protection
Services, Inc., 397 F. Supp.2d 792, 796-97 (N.D.W. Va. 2005), the
court finds that Penn Coal Corp. v. McGee and Co., 903 F. Supp.
980 (S.D.W. Va. 1995), is distinguishable from the instant case
and does not guide the choice-of-law analysis herein.

B.        *Breach of Contract*

        In the Amended Complaint, plaintiffs contend that, by denying coverage to them, Bituminous is in breach of contract because "Mulvey had a contract with Bituminous based upon the language as set forth in the certificate of insurance issued to Mulvey and the policy of insurance issued to DCI." See Count II of Amended Complaint.  Bituminous contends that, under controlling Virginia law, the certificate of insurance does not amend, extend or alter the Bituminous Policy to add Mulvey or McDonald's as additional insureds.

        In Shenandoah Life Ins. Co. v. French, 373 S.E.2d 718, 718-19 (Va. 1988), a widow filed suit against a group life and accident insurer following its denial of her claim for accidental death and dismemberment ("AD&D") benefits as a result of her husband's death in a job-related mining accident.  The master policy provided $25,000 in AD&D coverage to employees.  Id.  The coverage was nonoccupational, however, and available only if an employee died accidentally from non-work-related causes.  Id. at 718.  The certificate of insurance given to the widow's husband was defective and did not contain the nonoccupational exclusion stating that an employee was ineligible for AD&D benefits if the accident was work-related.  Id. at 718-19.

        The trial court instructed the jury as follows: "The court instructs the jury that the contract between Shenandoah

11

Life Insurance Company and [plaintiff's husband] consist[s] both of the master policy and the certificate and any conflict between the two should be resolved so as to provide the broadest coverage for [plaintiff's husband]." Id. at 720.  The Virginia Supreme Court noted that

> [a]ccepting the proposition that this was solely a breach-of-contract case, we conclude that the trial court made a fundamental error in determining what constituted the contract which could be sued upon. [The plaintiff] contended that the defective certificate sent to [her husband] was part of the contract of insurance. According to her, there was a conflict within the insurance policy because of the difference between the master policy and the certificate. [She] further contended that this conflict rendered the insurance policy ambiguous; that the ambiguity was to be resolved against the insurer and in favor of the insured.

Id. at 719-20.  The court held that the defective certificate of insurance was not part of the contract of insurance and, therefore, the widow was not entitled to AD&D benefits.  Id. at 720.

Based upon the holding of Shenandoah Life, the court concludes that plaintiffs' breach of contract claim must fail and, accordingly, Bituminous is entitled to judgment as a matter of law.

C.      Estoppel

Plaintiffs also contend that because Brown & Brown, as the agent of Bituminous, issued a certificate of insurance naming Mulvey as an additional insured to the DCI Policy, Bituminous is

12

estopped from denying coverage to Mulvey under the policy.  See Count III of Amended Complaint.  According to Bituminous, "there is, in reality, no distinction between a contract theory and an estoppel theory."  Defendant's Reply Memorandum at 13, fn 14. Therefore, Bituminous argues that under Shenandoah Life Ins. Co. v. French, 373 S.E.2d 718 (Va. 1988), plaintiffs fail under a contract or estoppel theory.  The court disagrees.

Acknowledging that breach of contract and estoppel are "quite different theories," the Shenandoah Life court took great pains to explain that its holding was limited to the breach of contract theory advanced by plaintiff.  Id. at 719-20.  The Shenandoah Life court does not consider principles of estoppel and, therefore, that decision does little to inform consideration of plaintiffs' estoppel argument.  On the other hand, plaintiffs have relied almost exclusively upon the West Virginia case of Marlin v. Wetzel County Board of Educ., 569 S.E. 2d 462 (W. Va. 2002), which, for obvious reasons, is of limited value in explaining Virginia law on this issue.[4]

Given the uncertainty of the choice-of-law issue to this point, the court believes that judgment as a matter of law on plaintiffs' estoppel theory is premature at this juncture.  If they can, plaintiffs will be permitted to show, via motion for

---

[4] Bituminous, on the other hand, has cited numerous cases from jurisdictions other than Virginia which reach a different result than Marlin.  See Reply Memorandum at 12-14.

13

summary judgment, that Bituminous is estopped from denying coverage under Virginia law and/or that the issue should go to a jury.  Bituminous, however, is free to renew its motion for summary judgment on this point guided by the court's conclusion that Virginia law applies.

D.      *Insured Contract*

        The court finds that there are genuine issues of material fact precluding summary judgment as to whether the subcontract is an insured contract.  However, given the court's resolution of the choice-of-law question, the court is not convinced it need even reach this issue.[5]  Given this court's determination that Virginia law applies, plaintiffs are directed to inform this court whether this theory of the case remains viable.

## Conclusion

        Based on the foregoing, the court concludes that Virginia law applies and that the motion for summary judgment of defendant Bituminous is **GRANTED** as to plaintiffs' breach of contract claim. The motion for summary judgment is **DENIED** without prejudice in all other respects.

---

        [5] Plaintiffs argue that Mulvey's subcontract agreement with DCI Shires is an insured contract under DCI's Bituminous policy "so that Mulvey stands in the shoes of DCI for coverage purposes."  While this may be true in West Virginia, see Marlin v. Wetzel County Board of Educ., 569 S.E. 2d 462 (W. Va. 2002), the court is not convinced this is the law in Virginia.

14

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO **ORDERED** this the 30th day of March, 2010.

ENTER:

David A. Faber
Senior United States District Judge

15