```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BLUEFIELD
```

MULVEY CONSTRUCTION, INC. et al.,

    Plaintiffs,

v.　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 1:07-0634

BITUMINOUS CASUALTY CORP., et al.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court are the cross motions for summary judgment filed by plaintiffs, Mulvey Construction, Inc. and One Beacon Insurance Company, and defendant Bituminous Casualty Corporation.  (Docs. # 103 and 105).  For reasons expressed more fully below, defendant's motion is GRANTED in part and DENIED in part and plaintiffs' motion is DENIED.[1]

### Factual Background

McDonald's retained Mulvey Construction, Inc. ("Mulvey"), a New York corporation, to construct a McDonald's restaurant in Bluefield, West Virginia.  Mulvey, in turn, entered into a subcontract agreement with DCI/Shires, Inc., a local contractor, to build a retaining wall and do other work on the McDonald's project.  DCI/Shires is a Virginia corporation.

---

[1] Also pending is Bituminous' motion to exceed the page limit.  (Doc. # 108).  For good cause shown, that motion is GRANTED.

Before the actual construction could begin and pursuant to the terms of the subcontract agreement, DCI/Shires agreed to place Mulvey and McDonald's on its insurance policy, issued by Bituminous Casualty Corporation ("the DCI Policy" or "the Policy"). To that end, DCI/Shires sent the subcontract agreement between itself and Mulvey to Brown & Brown, its insurance agent since the early 2000s. Brown & Brown is a Virginia corporation.

After receiving the request from DCI/Shires, Brown & Brown issued certificates of insurance. According to the certificates of insurance, Mulvey and McDonald's were additional insureds on the DCI Policy. According to the certificate of insurance, the "Certificate Holder is named as an additional insured in regard to the general liability policy." The certificate of insurance also states that

> THIS CERTIFICATE IS ISSUED AS A MATTER OF
> INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE
> CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT
> AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY
> THE POLICIES BELOW.

Brown & Brown contends that it sent the certificates to Bituminous but, for some reason, Mulvey and McDonalds were never added to the DCI Policy.

On January 3, 2003, Robert Blevins, an employee of the Sanitation Board of the City of Bluefield, responded to a complaint of a sewage line break at the McDonald's site. In order to repair the break, the Sanitary Board cut a trench in the middle

2

of the road, next to the McDonald's restaurant. While Blevins was in the trench replacing the broken sewer pipe, a section of concrete roadway and dirt sidewall fell on him. Blevins was killed as a result of the accident.

Blevins' wife, Rebecca Ann Blevins, individually and as executrix of his estate, filed a wrongful death action in the Circuit Court of Mercer County, West Virginia, against McDonald's, Mulvey, DCI/Shires, and others ("the Blevins action"). The Amended Complaint in the Blevins action alleges that the failure of a retaining wall at the McDonald's caused the break in the sewer line. The Blevins Complaint also alleges that the retaining wall was negligently constructed.

After the Blevins lawsuit was filed, on more than one occasion, both Mulvey and McDonald's requested that DCI/Shires assume their defense in the Blevins action. Bituminous denied the requests. According to Bituminous, neither Mulvey nor McDonald's were additional insureds on the Bituminous Policy. After a time, Mulvey and McDonald's paid $400,000.00 to settle the claims against them in the Blevins lawsuit. One Beacon Insurance Company ("One Beacon"), Mulvey's liability insurer, paid the amounts on behalf of McDonald's and Mulvey.

3

Invoking this court's diversity jurisdiction, on October 11, 2007,[2] Mulvey and One Beacon filed the instant lawsuit for declaratory judgment

> seeking a declaration that: i) Mulvey is entitled to primary insurance coverage from Bituminous as a named insured; ii) Mulvey's subcontract agreement with DCI Shires, Inc. ("DCI") is an insured contract under DCI's Bituminous policy so that Mulvey stands in the shoes of DCI for coverage purposes; iii) Bituminous owes Mulvey a duty to indemnify and defend it as an additional insured with an insured contract on its policy of insurance covering DCI, from any and all claims arising out of a 2003 accident which killed Robert Blevins; and iv) that Mulvey is entitled to payment of any and all settlements, defense costs, legal fees expended related to the Blevins claims and to obtain the insurance coverage it relied upon to award a job to DCI Shires, Inc.

Amended Complaint ¶1. Plaintiffs brought the following claims against Bituminous: declaratory judgment (Count I), breach of contract (Count II), estoppel (Count III), detrimental reliance (Count IV), and breach of duty of good faith and fair dealing and bad faith (Count VII).

By Memorandum Opinion and Order dated March 30, 2010, the court determined that Virginia law applied,[3] and dismissed plaintiffs' breach of contract claim. Bituminous has filed a

---

[2] An amended complaint was filed on May 16, 2008.

[3] On April 27, 2010, plaintiffs filed a motion to amend that ruling, (Doc. # 101), arguing that the court had gotten the choice of law wrong. At a status conference in this case, held on February 16, 2011, the court informed the parties that it was denying the motion to amend. Accordingly, the Clerk is directed to terminate this motion.

renewed motion for summary judgment and plaintiffs have filed a motion for summary judgment as well.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.

## Analysis

I.   *Declaratory Judgment, Estoppel and Detrimental Reliance*

In Count III, plaintiffs allege that "Bituminous and Brown & Brown are legally estopped from denying coverage to Mulvey under the DCI liability policy issued by Bituminous." Amended Complaint ¶ 37.  According to Count IV, "Mulvey relied on the representation by both [sic] Brown & Brown that it was named as an additional insured under the commercial general liability policy of insurance of DCI" and that "Mulvey's reliance on the representations of coverage of both Brown & Brown and Bituminous was to Mulvey's detriment and resulted in damages to Mulvey in that Bituminous refused to provide coverage."  Amended Complaint ¶¶ 39, 41.

"Estoppel is the doctrine by which a `party is prevented by his own acts from claiming a right to [the] detriment of [the] other party who was entitled to rely on such conduct and has acted accordingly.'"  Webb v. Webb, 16 Va. App. 486, 494, 431

6

S.E.2d 55, 61 (1993) (quoting Black's Law Dictionary 551 (6th ed. 1990)).

> [A] party seeking to invoke the doctrine of estoppel must prove by clear, precise, and unequivocal evidence the following elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc., 266 S.E.2d 887, 890 (Va. 1980). Under Virginia law, claims of estoppel and detrimental reliance overlap. See White v. White, 38 Va. App. 389, 393, 564 S.E.2d 700, 702 (2002) ("[D]etrimental reliance, or estoppel, is an equitable remedy against a party. . . ."). Indeed, courts have held that proof of detrimental reliance is "necessary to establish equitable estoppel." Automobile Ins. Co. Of Hartford, Conn. v. Hayes, 2010 WL 331756, *7 (E.D. Va. 2010); see also Mooney v. State Farm Mutual Automobile Ins. Co., 1992 WL 44809, *1 (4th Cir. 1992) ("proof of detrimental reliance necessary to establish an estoppel") (citing Harris v. Criterion Ins. Co., 281 S.E.2d 878, 881 (Va. 1981) (unpublished)). Additionally, a party's reliance upon the other's acts or assertions must be reasonable. "[E]stoppel occurs where 'the aggrieved party reasonably relied on the words and conduct of the person to be estopped.'" Barry

v. Donnelly, 781 F.2d 1040, 1042 (4th Cir. 1986) (quoting City of Bedford v. James Leffel Co., 558 F.2d 216, 217-18 (4th Cir. 1977)).

Estoppel may not, however, be used to extend the coverage of an insurance contract. In Norman v. Insurance Co. of North America, 239 S.E.2d 902, 908 (Va. 1978), the Virginia Supreme Court stated:

> "The general rule, which we approve, is that the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded. Annot., 1 A.L.R.3d 1139, 1159 (1965); 43 Am.Jur.2d, Insurance, § 1184, p. 1102 (1969); Insurance Co. of North America v. Atlantic Nat. Ins. Co., 329 F.2d 769 (4th Cir. 1964). But see Columbia Fire Ins. Co. v. Boykin, 185 F.2d 771 (4th Cir. 1950)."
>
> In Insurance Company v. Saccio, 204 Va. 769, 133 S.E.2d 268 (1963), and in Virginia Mutual v. State Farm Mutual, 204 Va. 783, 133 S.E.2d 277 (1963), we held that the filing by a liability insurance company of the SR-21 form required in Virginia, stating that its policy was in force and effect and covered the driver, did not estop the company from denying coverage when in fact there was no coverage.

Norman v. Insurance Co. of North America, 239 S.E.2d 902, 908 (Va. 1978) (quoting Sharp v. Richmond Life Ins. Co., 183 S.E.2d 132, 135 (1971)). The Norman court continued,

> In Insurance Company of North America v. Atlantic National Insurance Co., 329 F.2d 769, 775 (4th Cir. 1964), INA contended that Atlantic waived or was estopped to rely upon an exclusion clause in its policy by virtue of its filing of the SR-21 form. The court distinguished between the waiver of a mere breach of contract and a question of coverage and concluded that we would hold that

> Atlantic would not be estopped despite the filing of the form. It said:
>
> "As was pointed out by the court below, it is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained. See Campbell v. Aetna Casualty & Surety Co., 211 F.2d 732, 737 (4th Cir. 1954). As was suggested by the late Judge Soper in the Campbell case, 211 F.2d at page 736, there is a definite distinction between the waiver of a right to declare a forfeiture, to cancel or to rescind based upon some breach of a condition of the policy on the one hand and the extension of the coverage provided by the policy on the other."

Norman v. Insurance Co. of North America, 239 S.E.2d 902, 908 (Va. 1978).

Although there are several courts that hold an insurer estopped from denying coverage when a certificate of insurance has been issued naming the party as an additional insured, see, e.g., Sumitomo Marine & Fire Ins. Co. of Am. v. Southern Guaranty Ins. Co. of Georgia, 337 F.Supp.2d 1339, 1355 (N.D. Ga. 2004); Marlin v. Wetzel County Board of Educ., 569 S.E.2d 462, 469 (W. Va. 2002); Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Cas. Co., 482 N.W.2d 600, 603 (N.D. 1992), "the majority view is that where a certificate of insurance . . . expressly indicates it is not to alter the coverage of the underlying policy, the requisite intent is not shown and the certificate will not effect a change in the policy." Mountain Fuel Supply v. Reliance Ins. Co., 933 F.2d 882, 889 (10th Cir.

1991); see also True Oil Co. v. Mid-Continent Cas. Co., 2006 WL 728772, *4 (10th Cir. 2006) ("Thus, because True Oil was not made an additional insured under the policy, a contrary certificate of insurance does not extend coverage."); T.H.E. Ins. Co. v. City of Alton, 227 F.3d 802, 806 (7th Cir. 2000) ("The certificate issued to the City of Alton contained adequate warning that the insured could not simply rely on the certificate for the terms and conditions of coverage."); TIG Ins. Co. v. Sedwick James of Washington, 184 F. Supp.2d 591, 598 (S.D. Tex. 2001) (holding that "a certificate of insurance cannot create insurance coverage when the underlying policy does not provide for coverage"); G.E. Tignall & Co., Inc. v. Reliance Nat. Ins. Co., 102 F. Supp.2d 300, 304 (D. Md. 2000) (Under Maryland law, insurance certificate prepared by independent broker and designating general contractor as additional insured under subcontractor's liability policy did not create duty on insurer's part to defend or indemnify general contractor for its own negligence; certificate was not binding on insurer, and contained clear disclaimer that it was "issued as a matter of information only" and did not "extend or alter the coverage afforded.); Alabama Electric Cooperative, Inc. v. Bailey's Construction Co., Inc., 950 So.2d 280, 283-85 (Ala. 2006) (Landowner could not have reasonably relied on contractor's alleged misrepresentations based on certificates of insurance

indicating that landowner was additional insured on contractor's liability policies).

Furthermore, plaintiffs cannot make the necessary showing to estop Bituminous from denying coverage by clear and convincing evidence.[4] Any reliance on the certificates of insurance is unwarranted given that the certificates give clear notice that they cannot be relied upon for coverage under the Policy. The disclaimer language is clear and unambiguous:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

For these reasons, plaintiffs cannot show reasonable reliance. See Porowski v. Rehm, 2008 WL 5273086, *4 (N.J. Super. Ct. App. Div. 2008) ("Given this [clear disclaimer] language, even if plaintiff could place himself in the shoes of the homeowner for

---

[4] Plaintiffs argue that Shenandoah Life Ins. Co. v. French, 373 S.E.2d 718 (Va. 1988), "is determinative on this issue." However, as this court pointed out in its Memorandum Opinion and Order of March 30, 2010, the Shenandoah Life decision is of limited value in deciding this issue.

> Acknowledging that breach of contract and estoppel are "quite different theories," the Shenandoah Life court took great pains to explain that its holding was limited to the breach of contract theory advanced by plaintiff. Id. at 719-20. The Shenandoah Life court does not consider principles of estoppel and, therefore, that decision does little to inform consideration of plaintiffs' estoppel argument.

Memorandum Opinion and Order of March 30, 2010.

establishing an equitable estoppel claim, the homeowner could not have justifiably relied on the certificate of insurance.").

Based on the foregoing, Bituminous is entitled to judgment in its favor on Counts III and IV of the Amended Complaint.

II.     *Insured Contract*

The DCI policy provides coverage for damages "[a]ssumed in a contract or agreement that is an `insured contract', provided the `bodily injury' or `property damage' occurs subsequent to the execution of the contract or agreement." Exhibit D to Complaint at DCI00820.  The policy defines an "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for `bodily injury' or `property damage' to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."  Id. at DCI00830.

According to plaintiffs, the subcontract agreement between Mulvey and DCI/Shires is an insured contract within the meaning of the policy and, therefore, they are entitled to coverage under the policy.  The subcontract provided that

> To the fullest extent permitted by law,
> Subcontractor shall indemnify and hold harmless

12

> Owner, Architect and Contractor and all of their
> agents employees from and against all claims,
> damages, losses and expenses, including but not
> limited to attorney's fees, arising out of or
> arising from performance of Subcontractor's Work
> under this Agreement, provided such claim, damage
> loss or expense is attributable to bodily injury,
> sickness, disease or death, or to injury to or
> destruction of tangible property (other than the
> Work itself) including the loss of use resulting
> therefrom, to the extent caused in whole or part
> by any neglect, act or omission of Subcontractor
> or anyone directly or indirectly employed by him
> or anyone for whose acts he may be liable,
> regardless of whether it is caused in part by a
> party indemnified hereunder. This obligation of
> indemnification shall not be limited in any way
> by any limitation on the amount or type of
> damages, compensation or benefits payable by or
> for Subcontractor under workers' or workmen's
> compensation acts, disability benefit acts or
> other employee benefit acts.

Exhibit B to Complaint, p. 4.

Bituminous opposes this argument on numerous grounds. First, it contends that this court should not reach the issue because any indemnification claim by Mulvey against DCI/Shires is subject to mandatory arbitration as per the terms of the subcontract agreement. Indeed, there is an arbitration proceeding regarding the contract issues between Mulvey and DCI/Shires currently pending in New York.[5] Second, given that Virginia has not adopted the "stand in the shoes" doctrine recognized under West Virginia law, see Marlin v. Wetzel County

---

[5] Plaintiffs did not sue DCI/Shires directly in this action. According to plaintiffs, Mulvey's claims against DCI/Shires are the subject of a New York arbitration proceeding which was stayed pending the resolution of this case.

Board of Educ., 569 S.E.2d 462 (W. Va. 2002), plaintiffs are unable to seek indemnification under the policy.  Bituminous also contends that the indemnification clause in the subcontract is not an insured contract.

In KBS, Inc. v. Great American Insurance Co. of New York, 2006 WL 3538985, *12 (E.D. Va. 2006), the court was unable to determine an indemnitee's entitlement to insurance coverage where an insured contract provision in an insurance policy was implicated.  According to the KBS court, "the lack of finality regarding the ultimate liability issue, however, precludes this Court from making a coverage determination for any liability incurred. . . ."  Id. at *10.

This case likewise suffers from the same lack of finality.  Plaintiffs seeks a declaration that "Mulvey is entitled to payment of any and all settlements, indemnity payments, defense costs, legal fees expended to obtain the insurance coverage it relied upon to award the Subcontract Agreement to DCI, including any and all fees and costs incurred to prosecute this declaratory judgment action, to enforce the indemnity agreement, and to defend itself and McDonald's from the claims arising out of DCI's work. . . ."  Prayer for Relief at ¶ 3.  Plaintiffs make this request for sweeping relief without acknowledging that the indemnification agreement here is far less expansive than those seen in the cases they cite in their briefs.

In particular, DCI/Shires agreed to indemnify Mulvey for all claims, damages, losses and expenses, but only "<u>to the extent caused in whole or part by any neglect, act or omission of Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable</u>." Plaintiffs seek indemnification for the full amount of the settlement with the <u>Blevins</u> plaintiffs but there has been no finding regarding the portion of that settlement for which DCI/Shires is liable, if any. Furthermore, there is no evidence before the court by which it can make such an allocation.

> A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. <u>See</u> <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Air Line Pilots Ass'n v. Miller</u>, 523 U.S. 866, 879, 118 S.Ct. 1761, 140 L.Ed.2d 1070 n. 6 (1998) (quoting <u>Landis</u>, 299 U.S. at 254-55, 57 S.Ct. 163, 81 L.Ed. 153). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." <u>Leyva v. Certified Grocers of Cal., Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir.1979).

<u>Collins v. South Carolina Public Service Auth.</u>, 2006 WL 1851305, *1 (D.S.C. 2006).

Based upon the foregoing, the court finds that a stay of this action, insofar as plaintiffs seek a ruling on the insured

contract issue, is merited until the arbitration between Mulvey and DCI/Shires is concluded. Indeed, resolution of this issue is directly related to the ongoing arbitration proceedings. The court can see little reason for the arbitration proceedings to be stayed pending the conclusion of this lawsuit as the issues presented therein do not depend on any rulings by this court. On the other hand, completion of the arbitration proceeding will assist in resolving the insured contract matter before this court. Furthermore, DCI/Shires, whose involvement will be necessary to determine the extent of any damages caused by it or its agents, is a party to the arbitration but not to this case. Such a stay will also help to avoid any inconsistent results. Finally, the majority of the issues in this case have already been resolved and only the insured contract argument remains for decision. The only parties remaining in this lawsuit are plaintiffs, who are parties to the arbitration, and Bituminous, who has urged the court to refrain from deciding the issue because of the arbitration agreement. For these reasons, the case will be stayed pending the completion of the arbitration proceeding.

III.   *Breach of Duty of Good Faith and Fair Dealing and Bad Faith*

Even assuming that plaintiffs have standing to pursue a bad faith claim against Bituminous, there was no bad faith in

16

this case. The test for ascertaining whether an insurer acted in bad faith requires consideration of five factors:

1. whether reasonable minds could differ in the interpretation of the policy provisions defining coverage and exclusions;

2. whether the insurer made a reasonable investigation of the facts;

3. whether the information in the investigation supported the denial;

4. whether the insurer denied coverage as a negotiating tactic; and

5. whether the insurer's defense raises issues of first impression or a reasonably debatable question of law or fact.

CUNA Mut. Ins. v. Norman, 375 S.E.2d 724, 727 (Va. 1989).

Consideration of the first and fifth factors in this case weighs overwhelmingly in a finding that no bad faith occurred here. As borne out by the entry of summary judgment in their favor, Bituminous' arguments and interpretation of the policy have been, at a minimum, "reasonably debatable." There record contains no evidence to support a conclusion that Bituminous acted in bad faith and, accordingly, it is entitled to judgment in its favor.

## Conclusion

For the reasons discussed above, Bituminous' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiffs' motion for summary judgment is DENIED. This matter is STAYED until resolution of the underlying arbitration in this

matter and Mulvey is directed to file quarterly status reports with the court indicating the status of the arbitration. The Clerk is directed to remove this case from the court's active docket and to send copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 31st day of March, 2011.

ENTER:

David A. Faber
Senior United States District Judge