```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

MULVEY CONSTRUCTION, INC. et al.,

    Plaintiffs,

v.                              CIVIL ACTION NO. 1:07-0634

BITUMINOUS CASUALTY CORP., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

By Judgment Order entered on March 29, 2013, the court GRANTED the renewed motion for summary judgment filed by defendant Bituminous Casualty Corporation (Doc. # 182) and DENIED the renewed motion for summary judgment filed by plaintiffs, Mulvey Construction, Inc. and One Beacon Insurance Company. (Doc. # 180). The reasons for that decision follow.

### Factual Background

McDonald's retained Mulvey Construction, Inc. ("Mulvey"), a New York corporation, to construct a McDonald's restaurant in Bluefield, West Virginia. Mulvey, in turn, entered into a subcontract agreement with DCI/Shires, Inc., a local contractor, to build a retaining wall and do other work on the McDonald's project.

Before the actual construction could begin and pursuant to the terms of the subcontract agreement, DCI/Shires agreed to place Mulvey and McDonald's on its insurance policy, issued by Bituminous Casualty Corporation ("the Bituminous Policy"). To

that end, DCI/Shires sent the subcontract agreement between itself and Mulvey to Brown & Brown, its insurance agent since the early 2000s.

After receiving the request from DCI/Shires, Brown & Brown issued certificates of insurance.  According to the certificates of insurance, Mulvey and McDonald's were additional insureds on the DCI Policy.  According to the certificate of insurance, the "Certificate Holder is named as an additional insured in regard to the general liability policy."  The certificate of insurance also states that

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

Brown & Brown contends that it sent the certificates to Bituminous but, for some reason, Mulvey and McDonalds were never added to the DCI Policy.

On January 3, 2003, Robert Blevins, an employee of the Sanitation Board of the City of Bluefield, responded to a complaint of a sewage line break at the McDonald's site.  In order to repair the break, the Sanitary Board cut a trench in the middle of the road, next to the McDonald's restaurant.  While Blevins was in the trench replacing the broken sewer pipe, a section of concrete roadway and dirt sidewall fell on him.  Blevins was killed as a result of the accident.

2

Blevins' wife, Rebecca Ann Blevins, individually and as executrix of his estate, filed a wrongful death action in the Circuit Court of Mercer County, West Virginia, against McDonald's, Mulvey, DCI/Shires, and others ("the Blevins action"). The Amended Complaint in the Blevins action alleges that the failure of a retaining wall at the McDonald's caused the break in the sewer line. The Blevins Complaint also alleges that the retaining wall was negligently constructed.

After the Blevins lawsuit was filed, on more than one occasion, both Mulvey and McDonald's requested that Bituminous assume their defense in the Blevins action. Bituminous denied the requests. According to Bituminous, neither Mulvey nor McDonald's were additional insureds on the Bituminous Policy. After a time, Mulvey and McDonald's paid to settle the claims against them in the Blevins lawsuit. One Beacon Insurance Company ("One Beacon"), Mulvey's liability insurer, paid the amounts on behalf of McDonald's and Mulvey.

Invoking this court's diversity jurisdiction, on October 11, 2007,[1] Mulvey and One Beacon (referred to collectively as "Mulvey") filed the instant lawsuit for declaratory judgment

> seeking a declaration that: i) Mulvey is entitled
> to primary insurance coverage from Bituminous as a
> named insured; ii) Mulvey's subcontract agreement
> with DCI Shires, Inc. ("DCI") is an insured
> contract under DCI's Bituminous policy so that

---

[1] An amended complaint was filed on May 16, 2008.

> Mulvey stands in the shoes of DCI for coverage
> purposes; iii) Bituminous owes Mulvey a duty to
> indemnify and defend it as an additional insured
> with an insured contract on its policy of
> insurance covering DCI, from any and all claims
> arising out of a 2003 accident which killed Robert
> Blevins; and iv) that Mulvey is entitled to
> payment of any and all settlements, defense costs,
> legal fees expended related to the Blevins claims
> and to obtain the insurance coverage it relied
> upon to award a job to DCI Shires, Inc.

Amended Complaint ¶1. Plaintiffs brought the following claims against Bituminous: declaratory judgment (Count I), breach of contract (Count II), estoppel (Count III), detrimental reliance (Count IV), and breach of the duty of good faith and fair dealing (Count VII).

On March 24, 2009, Bituminous filed a motion for summary judgment contending that it was entitled to judgment as a matter of law because, under Virginia law, neither Mulvey nor McDonald's were additional insureds under the DCI Policy. Plaintiffs argued that West Virginia law is applicable to the coverage determination and, therefore, pursuant to Marlin v. Wetzel County Board of Educ., 569 S.E. 2d 462 (W. Va. 2002), Mulvey was entitled to coverage under the Bituminous Policy. In the alternative, plaintiffs contended that even if Virginia law applies, summary judgment was not warranted.

By Order entered March 30, 2010, the court concluded that Virginia law applies and, pursuant to Shenandoah Life Ins. Co. v. French, 373 S.E.2d 718 (Va. 1988), granted the motion for summary

4

judgment of defendant Bituminous as to plaintiffs' breach of contract claim.  The court denied the motion in all other respects.

The parties filed additional summary judgment motions and, on March 31, 2011, the court granted Bituminous' motion as to plaintiffs' claims of estoppel, detrimental reliance, and breach of the duty of good faith and fair dealing.  As to plaintiff's argument that they were entitled to coverage under the "insured contract" provisions of the policy, the court stayed the case pending completion of the ongoing arbitration proceeding in New York.[2]  Specifically, the court said:

> [T]he court finds that a stay of this action, insofar as plaintiffs seek a ruling on the insured contract issue, is merited until the arbitration between Mulvey and DCI/Shires is concluded. Indeed, resolution of this issue is directly related to the ongoing arbitration proceedings. The court can see little reason for the arbitration proceedings to be stayed pending the conclusion of this lawsuit as the issues presented therein do not depend on any rulings by this court.

Memorandum Opinion and Order of March 31, 2011.

Thereafter, Mulvey filed a notice of appeal but later voluntarily dismissed its appeal, presumably because there was no final order to appeal.  Mulvey also voluntarily dismissed the arbitration proceeding in New York.

---

[2] There was an arbitration proceeding regarding the subcontract issues between Mulvey and DCI/Shires pending in New York.  The subcontract agreement is subject to New York law.

Plaintiffs have renewed their motion for summary judgment, arguing that Mulvey's subcontract agreement with DCI Shires is an insured contract under DCI's Bituminous policy. According to plaintiffs, the <u>Uniwest</u> decisions handed down by the Virginia Supreme Court, <u>Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc.</u>, 280 Va. 428 (2010) ("<u>Uniwest</u> I") and <u>Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc.</u>, 281 Va. 509 (2011) ("<u>Uniwest</u> II"), establish that the indemnification agreement is an "insured contract" and that, further, the court is not required to make a finding regarding relative liability.

Bituminous has filed a cross motion for summary judgment arguing that there is no coverage. Bituminous opposes this argument on numerous grounds. First, it contends that this court should not reach the issue because any indemnification claim by Mulvey against DCI/Shires is subject to mandatory arbitration as per the terms of the subcontract agreement. Bituminous also contends that the indemnification clause in the subcontract is not an insured contract. Finally, Bituminous argues that plaintiffs are procedurally barred from bringing the insured contract claim at this stage.

On February 21, 2013, the court held a hearing on the motions and they are ripe for decision.

### **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides:

6

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.

## **Analysis**

According to Mulvey, based upon the Uniwest case, "[l]iability is absolutely clear against Bituminous- the indemnity provision is an insured contract under the policy, and by refusing to accept the defense, Bituminous must pay the costs of defense and reimbursement of settlement amounts."  Doc. No. 181 at p. 10.  As Mulvey sees it, the indemnification provisions in this case and Uniwest are "functionally identical," as are the definitions of "insured contract" found in both policies.  Id. at 7.  Therefore, Mulvey's argues that "just as Uniwest was an insured under the CAN and AIU policies, Mulvey is an insured under the Bituminous policy at issue here, and Bituminous has a duty to defend and indemnify Mulvey."  Id. at 8.  Because plaintiffs argue that Uniwest controls this court's disposition of the issues presented in their motion, a discussion of that case is warranted.

A.     *Uniwest*

In Uniwest I, 280 Va. 428 (2010), a general contractor ("Uniwest") had a prime contract from an owner ("Fountains") to renovate a building located in Philadelphia.  See id. at 433. The prime contract contained a provision requiring broad

8

indemnification of the owner.[3] See id. In addition, the prime contract contained a clause requiring the general contractor to insert a provision in all of its subcontracts requiring all subcontractors to assume all duties and obligations owed by the general contractor under the terms of the prime contract. See id.

The general contractor subcontracted elevator renovations to a subcontractor (Amtech). See id. at 434. The subcontract, which was governed by Virginia law, contained an indemnification clause, as well as a "pass through" clause, under which the subcontractor agreed to be bound by all terms and conditions of the general contractor's prime contract with the owner. See id.

---

[3] The indemnity provision obligated Uniwest to defend and indemnify Fountains

> [t]o the fullest extent permitted by law . . . from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or injury to or destruction of tangible property, (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of [Uniwest], a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

Id.

An exhibit to the subcontract also contained a separate provision requiring Amtech, the subcontractor, to name Uniwest, the general contractor, as an additional insured under its liability insurance policies.  See id. at 434-35.

Amtech maintained two relevant liability insurance policies, a primary commercial liability and an umbrella excess policy.  The general liability policy, issued by CNA, contained an errors and omissions endorsement which, in substance, included as an additional insured any person or entity that the named insured was required by contract to add as an additional insured to its insurance policies.  See id. at 435.  Similarly, the umbrella policy, issued by AIU Insurance Company, contained a provision insuring as an additional insured any person or entity covered as an additional insured under the underlying commercial liability policy.  See id.  In addition, under a separate provision, Subdivision E-7, the AIU umbrella policy expressly included as an additional insured any person or entity "to whom you [the policyholder] are obligated by a written 'Insured Contract' to provide insurance. . . ."  Id. at 435-36.

During the course of the renovation project, two Amtech employees were involved in an accident - - one died and the other suffered serious injury.  See id. at 436.  The estate of the deceased employee and the injured employee sued Uniwest, the general contractor.  See id.  CNA, the primary insurer for

Amtech, afforded coverage to Uniwest and ultimately exhausted its limits.  See id. at 437.  AIU (the umbrella policy) refused to defend and indemnify Uniwest.  See id.  Ultimately Uniwest and its insurers settled the employees' lawsuit against it for $9,500,000.  See id.  Thereafter, Uniwest and its insurers filed a complaint against Amtech and its insurers in Virginia circuit court.  See id.  Uniwest eventually non-suited that action.  See id.

Thereafter, Amtech and AIU filed a complaint in the circuit court seeking a declaratory judgment that they were not liable to Uniwest or its insurers "in any amount or on any basis."  Id. at 438.  After a five-day bench trial, the circuit court determined, among other things, that AIU did not have a duty to defend and indemnify Uniwest based upon Subdivision E-7 of the AIU Policy.  See id. at 439.  As noted above, Subdivision E-7 included as an insured "[a]ny person . . . to whom you are obligated by a written Insured Contract to provide insurance such as is afforded by this policy but only with respect to . . . liability arising out of operations conducted by you or on your behalf."  Id. at 435-36.  The AIU Policy defined "Insured Contract" to mean "any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party."  Id. at 436.

11

The Virginia Supreme Court reversed, holding that in light of the provisions of the subcontract, and the prime contract incorporated therein by virtue of the "pass through" clause, and particularly in light of the above-referenced coverage provisions of the AIU umbrella policy, the general contractor was expressly made an insured under the umbrella policy. See id. at 444-45. The Court stated that holding as follows:

> Therefore we find that both predicates of the CNA Policy and Subdivision E-7 are met: the Subcontract required Amtech to defend and indemnify Uniwest and to provide insurance to Uniwest. Consequently, Uniwest was an insured under the CNA and AIU policies. Therefore, we hold that AIU had a duty to defend and indemnify Uniwest under both Subdivision E-4 and Subdivision E-7.

Id. at 445. On the basis of those provisions in the AIU policy, the Virginia Supreme Court held that the general contractor, Uniwest, was an insured entitled to coverage thereunder. See id.

As to the relief, the Uniwest court held:

> Amtech, ABM, and AIU argue that our conclusions necessarily require that we remand for further proceedings to determine the extent to which the accident giving rise to the Employees' lawsuit was caused by Uniwest's negligence. We agree.
>
> As we have determined, the Subcontract does not require Amtech to indemnify Uniwest for its own negligence. Amtech is not liable to contribute to Uniwest's settlement with the Employees to the extent, if any, the accident was caused by Uniwest's own negligence.

>    Accordingly, we will remand for trial to determine the issue of relative liability for the accident and for entry of judgment against Amtech and AIU for compensatory damages based upon Amtech's relative liability.  Damages shall further include the costs of Uniwest's defense in the Employees' lawsuit for which Amtech and AIU are liable based on their duty to defend it in that litigation, to the extent such costs have not yet been paid by Amtech and its insurers.

Id. at 445-46.

On April 21, 2011, the court withdrew part of its opinion in Uniwest I.  See Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc., 281 Va. 509 (2011) ("Uniwest II").  Specifically, the court withdrew Part II(D) of its opinion of September 16, 2010, and directed the circuit court to "determine the extent of Amtech's liability to Uniwest for its failure to defend and indemnify Uniwest.  The court also shall determine whether and to what extent AIU is liable under Subdivision E-4 and Subdivision E-7, consistent with the Virginia Supreme Court's opinion of September 16, 2010, as amended. . . ."  Id. at 510.

B.      *Insured Contract Provision in Bituminous Policy*

The Bituminous policy provides coverage to DCI for damages "[a]ssumed in a contract or agreement that is an `insured contract', provided the `bodily injury' or `property damage' occurs subsequent to the execution of the contract or agreement." Exhibit D to Complaint at DCI00820.  The policy defines an "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business (including an

13

indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for `bodily injury' or `property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Id. at DCI00830.

According to plaintiffs, the subcontract agreement between Mulvey and DCI/Shires is an insured contract within the meaning of the policy and, therefore, they are entitled to coverage under the policy. The subcontract provided that

> To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect and Contractor and all of their agents employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or arising from performance of Subcontractor's Work under this Agreement, provided such claim, damage loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, to the extent caused in whole or part by any neglect, act or omission of Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder. This obligation of indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

Exhibit B to Complaint, p. 4.

Mulvey argues that this case is on all fours with Uniwest. However, in so doing, plaintiffs either ignore or fail to see the critical difference between the two policies at issue: under the AIU Policy any person to whom the insured becomes obligated under an Insured Contract becomes an additional insured under the AIU Policy. The Bituminous Policy has no similar provision.

The "insured contract" provision in the Bituminous Policy merely provides coverage to its insured; it does not extend coverage to third parties. In contrast, in the Uniwest case, the AIU Policy makes a party to an insured contract an insured under that policy. Even assuming that the subcontract between Mulvey and DCI is an insured contract within the definition of the Bituminous Policy, it does not make Mulvey an additional insured under that policy.[4] Rather, it only obligates Bituminous to

---

[4] Nor is Mulvey a third-party beneficiary of the policy. Under Virginia law, a person may seek to enforce a contract to which he is not a party where "the parties to [the] contract clearly and definitely intended to confer a benefit upon him." Copenhaver v. Rogers, 384 S.E.2d 593, 596 (1989) (citing Allen v. Lindstrom, 379 S.E.2d 450, 457 (Va. 1989)). This rule is codified at Va. Code § 55-22. "However, this third party beneficiary doctrine only applies when parties to [the contract to benefit the third party] clearly and definitely intended to confer a benefit upon him." American Bankers Ins. Co. of Florida v. Maness, 101 F.3d 358 (4th Cir. 1996) (citations and quotations omitted). "If a party derives only an incidental benefit from a contract it cannot sue as a third-party beneficiary." RCI Contractors & Engineers, Inc. v. Joe Rainero Tile Co., Inc., 677 F. Supp.2d 914, 916 (W.D. Va. 2010). Accordingly, Mulvey must show that DCI/Shires and Bituminous contracted with the intent to confer a benefit upon Mulvey. See id. This plaintiffs cannot

provide coverage to DCI for any damages DCI incurs as a result of the subcontract. For example, if Mulvey had seen the New York arbitration to completion and received an award of damages against DCI, Bituminous would be liable to DCI for those damages.[5]

Regarding the ability of a party to an "insured contract" to recover as a third-party to an insurance policy, one court stated:

> For purposes of this motion, I will assume that Raytheon is an indemnitee under the Erie-Massport contract and that the Erie-Massport contract is an "insured contract." The question remains, however, whether TIG owes any duty to a party that is not a named or additional insured under the policy. It is axiomatic that "a liability insurer owes a broad duty to defend its insured against any claims that create a potential for

do.

Mulvey has not shown that both Bituminous and DCI/Shires entered into the insurance contract "clearly and definitely intend[ing] to confer a benefit upon him." The insured contract provision is in place to confer a benefit upon the insured, in this case, DCI/Shires, and to protect it from liability. See Raytheon Engineers & Constructors, Inc. v. Erie Interstate Contractors, 2008 WL 2345371, *4 (Mass. Super. 2008) ("Clearly, Erie was the primary beneficiary of the TIG Policy. Although the TIG Policy envisioned the existence of an `insured contract,' Raytheon does not allege that TIG and Erie intended to benefit those parties who enter into insured contracts with Erie. . . ."). While Mulvey may be an incidental beneficiary to the policy between Bituminous and DCI/Shires, it certainly has not established that it was the intended beneficiary.

---

[5] Assuming, of course, that the Subcontract between DCI and Mulvey is determined to be an "insured contract" under the Bituminous Policy.

16

> indemnity." Doe v.. Liberty Mutual Ins. Co., 423 Mass. 366, 368 (1996) (emphasis added). Raytheon cites no authority for the proposition that a duty to defend or indemnify extends to entities who enter into "insured contracts" with the insured.

Raytheon Engineers & Constructors, Inc. v. Erie Interstate Contractors, No. 200704705, 2008 WL 2345371, *3 (Mass. Super. 2008) (emphasis added). Mulvey cites no authority for the proposition that a third-party to an "insured contract" is entitled to a defense and/or coverage from the insurer. Indeed, numerous courts have held otherwise. See Sears, Roebuck & Co. v. Royal Surplus Lines Ins. Co., No. 01-4279, 2003 WL 1225691, *4 (7th Cir. Mar. 14, 2003) ("[A]n insurer's obligation to indemnify extends only to parties identified in the policy as a named or additional insured. Because Sears was not an additional insured under Policy 639, Royal was under no obligation to indemnify Sears for the money it paid in settlement of the Battaglieri action."); Hartford Casualty Ins. Co. v. ACC Meat Co., LLC, No. 1:10-CV-617, 2012 WL 4506059, *6 (M.D. Pa. Apr. 26, 2012) ("Thus, even if there were an indemnification agreement between B&S and ACC [which was an insured contract under the insurance policy], Hartford's only obligation under the policy is to indemnify its insured, B&S, against any claims brought against it by ACC."); Kummer Enter., Inc. v. Valley Forge Ins. Co., No. 1:09-cv-109, 2010 WL 431423, *3 (W.D. Mich. Jan. 27, 2010) ("However, it does not follow that, because the subcontract between Plaintiff and

WPM is an insured contract, Plaintiff is entitled to coverage under the Policy."); Alliance Syndicate, Inc. v. Parsec, Inc., 741 N.E.2d 1039, 1045 (Ill. 2000) ("The fact that the Parsec/CSX agreement was an `insured contract' did not expand the policy to automatically provide coverage for CSX or its liability, or impose any duty on Alliance to defend CSX in the underlying suit. Instead, Parsec, as the insured, was covered for the liability it assumed under the insured contract.").

Because Mulvey is not an additional insured under the Bituminous Policy, it is not entitled to coverage under the Policy.

## Conclusion

For the reasons discussed above, Bituminous' motion for summary judgment was GRANTED and plaintiffs' motion for summary judgment was DENIED. The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 3rd day of April, 2013.

ENTER:

David A. Faber
Senior United States District Judge