IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MULVEY CONSTRUCTION, INC. et al.,

      Plaintiffs,

v.                                    CIVIL ACTION NO. 1:07-0634

BITCO GENERAL LIFE INSURANCE CORP.,
et al.,

      Defendants.

### MEMORANDUM OPINION AND ORDER

By Judgment Order entered September 30, 2015,[1] the court granted defendant's fourth motion for summary judgment.  (Doc. No. 212).  The reasons for that decision follow.

### Factual Background

McDonald's retained Mulvey Construction, Inc. ("Mulvey"), a New York corporation, to construct a McDonald's restaurant in Bluefield, West Virginia.  Mulvey, in turn, entered into a subcontract agreement with DCI/Shires, Inc., a local contractor, to build a retaining wall and do other work on the McDonald's project.  DCI/Shires is a Virginia corporation.

Before the actual construction could begin and pursuant to the terms of the subcontract agreement, DCI/Shires agreed to place Mulvey and McDonald's on its insurance policy, issued by defendant

---

[1] The time to appeal runs from entry of the Judgment Order.  Federal Rule of Appellate Procedure 4(a)(1).

Bituminous[2] ("the DCI Policy" or "the policy").  To that end,
DCI/Shires sent the subcontract agreement between itself and
Mulvey to Brown & Brown, its insurance agent since the early
2000s.

After receiving the request from DCI/Shires, Brown & Brown
issued certificates of insurance.  According to the certificates
of insurance, Mulvey and McDonald's were additional insureds on
the DCI Policy.  According to the certificate of insurance, the
"Certificate Holder is named as an additional insured in regard to
the general liability policy."  The certificate of insurance also
stated that

> THIS CERTIFICATE IS ISSUED AS A MATTER OF
> INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE
> CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT
> AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY
> THE POLICIES BELOW.

Brown & Brown contended that it sent the certificates to
Bituminous but, for some reason, Mulvey and McDonalds were never
added to the DCI Policy.

On January 3, 2003, Robert Blevins, an employee of the
Sanitation Board of the City of Bluefield, responded to a
complaint of a sewage line break at the McDonald's site.  In order
to repair the break, the Sanitary Board cut a trench in the middle
of the road, next to the McDonald's restaurant.  While Blevins was

---

[2] Formerly known as Bituminous Casualty Corporation.
BITCO and Bituminous will be used interchangeably herein.

2

in the trench replacing the broken sewer pipe, a section of concrete roadway and dirt sidewall fell on him.  Blevins was killed as a result of the accident.

Blevins' wife, Rebecca Ann Blevins, individually and as executrix of his estate, filed a wrongful death action in the Circuit Court of Mercer County, West Virginia, against McDonald's, Mulvey, DCI/Shires, and others ("the Blevins action").  The Amended Complaint in the Blevins action alleges that the failure of a retaining wall at the McDonald's caused the break in the sewer line.  The Blevins Complaint also alleges that the retaining wall was negligently constructed.

After the Blevins lawsuit was filed, on more than one occasion, both Mulvey and McDonald's requested that DCI/Shires assume their defense in the Blevins action.  DCI/Shires and Mulvey denied the requests.  According to Bituminous, neither Mulvey nor McDonald's were additional insureds on the Bituminous Policy. After a time, Mulvey and McDonald's paid $400,000.00 to settle the claims against them in the Blevins lawsuit.  One Beacon Insurance Company ("One Beacon"), Mulvey's liability insurer, paid the amounts on behalf of McDonald's and Mulvey.

Invoking this court's diversity jurisdiction, on October 11, 2007,[3] Mulvey and One Beacon (collectively "Mulvey" or "plaintiffs") filed the instant lawsuit for declaratory judgment

---

[3] An amended complaint was filed on May 16, 2008.

3

seeking a declaration that: i) Mulvey is entitled
to primary insurance coverage from Bituminous as a
named insured; ii) Mulvey's subcontract agreement
with DCI Shires, Inc. ("DCI") is an insured
contract under DCI's Bituminous policy so that
Mulvey stands in the shoes of DCI for coverage
purposes; iii) Bituminous owes Mulvey a duty to
indemnify and defend it as an additional insured
with an insured contract on its policy of
insurance covering DCI, from any and all claims
arising out of a 2003 accident which killed Robert
Blevins; and iv) that Mulvey is entitled to
payment of any and all settlements, defense costs,
legal fees expended related to the Blevins claims
and to obtain the insurance coverage it relied
upon to award a job to DCI Shires, Inc.

Amended Complaint ¶1.  Plaintiffs brought the following claims

against Bituminous: declaratory judgment (Count I), breach of

contract (Count II), estoppel (Count III), detrimental reliance

(Count IV), and breach of the duty of good faith and fair dealing

(Count VII).

On March 24, 2009, Bituminous filed a motion for summary

judgment contending that it was entitled to judgment as a matter

of law because, under Virginia law, neither Mulvey nor McDonald's

were additional insureds under the DCI Policy.  Plaintiffs argued

that West Virginia law is applicable to the coverage determination

and, therefore, pursuant to Marlin v. Wetzel County Board of

Educ., 569 S.E. 2d 462 (W. Va. 2002), Mulvey was entitled to

coverage under the Bituminous Policy.  In the alternative,

plaintiffs contended that even if Virginia law applies, summary

judgment was not warranted.

By Order entered March 30, 2010, the court concluded that Virginia law applies and, pursuant to Shenandoah Life Ins. Co. v. French, 373 S.E.2d 718 (Va. 1988), granted the motion for summary judgment of defendant Bituminous as to plaintiffs' breach of contract claim.  The court denied the motion in all other respects.

The parties filed additional summary judgment motions and, on March 31, 2011, the court granted Bituminous' motion as to plaintiffs' claims of estoppel, detrimental reliance, and breach of the duty of good faith and fair dealing.  As to plaintiff's argument that they were entitled to coverage under the "insured contract" provisions of the policy, the court stayed the case pending completion of the ongoing arbitration proceeding in New York.  Specifically the court said:

> In KBS, Inc. v. Great American Insurance Co. of New York, 2006 WL 3538985, *12 (E.D. Va. 2006), the court was unable to determine an indemnitee's entitlement to insurance coverage where an insured contract provision in an insurance policy was implicated.  According to the KBS court, "the lack of finality regarding the ultimate liability issue, however, precludes this Court from making a coverage determination for any liability incurred. . . ." Id. at *10.
>
> This case likewise suffers from the same lack of finality.  Plaintiffs seeks a declaration that "Mulvey is entitled to payment of any and all settlements, indemnity payments, defense costs, legal fees expended to obtain the insurance coverage it relied upon to award the Subcontract Agreement to DCI, including any and all fees and costs incurred to prosecute this declaratory judgment action, to enforce the indemnity

agreement, and to defend itself and McDonald's from the claims arising out of DCI's work. . . ." Prayer for Relief at ¶ 3.  Plaintiffs make this request for sweeping relief without acknowledging that the indemnification agreement here is far less expansive than those seen in the cases they cite in their briefs.  In particular, DCI/Shires agreed to indemnify Mulvey for all claims, damages, losses and expenses, but only "to the extent caused in whole or part by any neglect, act or omission of Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable."  Plaintiffs seek indemnification for the full amount of the settlement with the Blevins plaintiffs but there has been no finding regarding the portion of that settlement for which DCI/Shires is liable, if any. Furthermore, there is no evidence before the court by which it can make such an allocation.

* * *

    Based upon the foregoing, the court finds that a stay of this action, insofar as plaintiffs seek a ruling on the insured contract issue, is merited until the arbitration between Mulvey and DCI/Shires is concluded.[4]  Indeed, resolution of this issue is directly related to the ongoing arbitration proceedings.  The court can see little reason for the arbitration proceedings to be stayed pending the conclusion of this lawsuit as the issues presented therein do not depend on any rulings by this court.  On the other hand, completion of the arbitration proceeding will assist in resolving the insured contract matter before this court.  Furthermore, DCI/Shires, whose involvement will be necessary to determine the extent of any damages caused by it or its agents, is a party to the arbitration but not to this case.  Such a stay will also help to avoid any inconsistent results.  Finally, the majority of the issues in this case have already been resolved and only the insured contract argument remains for

---

    [4] There was an arbitration proceeding regarding the subcontract issues between Mulvey and DCI/Shires pending in New York.  The subcontract agreement is subject to New York law.

6

> decision.  The only parties remaining in this
> lawsuit are plaintiffs, who are parties to the
> arbitration, and Bituminous, who has urged the
> court to refrain from deciding the issue because
> of the arbitration agreement.

Memorandum Opinion and Order of March 31, 2011.

Thereafter, Mulvey filed a notice of appeal but later voluntarily dismissed its appeal, presumably because there was no final order to appeal.  Mulvey also voluntarily dismissed the arbitration proceeding in New York.

Plaintiffs renewed their motion for summary judgment, arguing that Mulvey's subcontract agreement with DCI/Shires was an insured contract under DCI's Bituminous policy.  According to plaintiffs, the Uniwest decisions handed down by the Virginia Supreme Court, Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc., 280 Va. 428 (2010) ("Uniwest I") and Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc., 281 Va. 509 (2011) ("Uniwest II"), establish that the indemnification agreement at issue in this case is an "insured contract" and that, further, the court is not required to make a finding regarding relative liability.

Bituminous filed a cross motion for summary judgment arguing that there was no coverage.  In support of its argument, Bituminous contended that this court should not reach the issue because any indemnification claim by Mulvey against DCI/Shires was subject to mandatory arbitration as per the terms of the subcontract agreement.  Bituminous also contended that the

indemnification clause in the subcontract is not an insured contract.  Finally, Bituminous argued that plaintiffs are procedurally barred from bringing the insured contract claim at this stage.

By Judgment Order entered on March 29, 2013, the court granted Bitiminous' motion for summary judgment and denied plaintiffs' motion for summary judgment.  In rejecting plaintiffs' argument, the court noted:

> Mulvey argues that this case is on all fours with Uniwest.  However, in so doing, plaintiffs either ignore or fail to see the critical difference between the two policies at issue: under the AIU Policy any person to whom the insured becomes obligated under an Insured Contract becomes an additional insured under the AIU Policy.  The Bituminous Policy has no similar provision.

> The "insured contract" provision in the Bituminous Policy merely provides coverage to its insured; it does not extend coverage to third parties.  In contrast, in the Uniwest case, the AIU Policy makes a party to an insured contract an insured under that policy.  Even assuming that the subcontract between Mulvey and DCI is an insured contract within the definition of the Bituminous Policy, it does not make Mulvey an additional insured under that policy.  Rather, it only obligates Bituminous to provide coverage to DCI for any damages DCI incurs as a result of the subcontract.  For example, if Mulvey had seen the New York arbitration to completion and received an award of damages against DCI, Bituminous would be liable to DCI for those damages.

Memorandum Opinion and Order of April 3, 2013 (internal footnotes omitted).

Mulvey appealed.  By Opinion dated May 7, 2014, the United States Court of Appeal for the Fourth Circuit affirmed the court's three prior summary judgment rulings in all respects on the substantive issues decided therein.  See Mulvey Const., Inc. v. Bituminous Cas. Corp., No. 13-1571, 571 F. App'x 150 (4th Cir. May 7, 2014).  The Fourth Circuit did, however, find fault in the court's failure to address the policy's Supplementary Payments section.  See id. at *161.  Specifically the appeals court held:

> Notably, the district court did not address the insurance policy's Supplementary Payments section.  Although that section does not make Mulvey an additional insured, it states that: "[i]f [Bituminous] defend[s] an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit', we will defend that indemnitee if all of the following conditions are met[.]"  J.A. 110.  The requisite conditions include, among others:  "the insured has assumed the liability of the indemnitee in . . . an 'insured contract'"  "[t]his insurance applies to such liability assumed by the insured;" "the obligation to defend . . . that indemnitee[ ] has also been assumed by the insured in the same 'insured contract[.]'"  J.A. 110-11.  If these conditions have been met, then Mulvey is entitled to Bituminous's defense and the district court's grant of summary judgment to Bituminous was in error because the insurance company would not be entitled to judgment as a matter of law.
>
> Based on the record before us, it appears that at least some of these conditions may be met.  Under these circumstances, we cannot affirm the district court's grant of summary judgment without the benefit of its analysis of a directly relevant section of the insurance policy.  We therefore vacate the district court's summary judgment order on the insured contract theory and remand with specific instructions to the district court to address whether the requirements of this provision

have been met and whether, specifically taking the
provision into consideration, Bituminous had a
duty to defend Mulvey in the underlying lawsuit.

Id.

After the mandate was handed down, the court reopened
discovery on the supplementary payments issue because, as will be
explained more fully below, Mulvey's alleged entitlement to
coverage under the supplementary payments provision was never
raised in any of its filings before this court.  Defendant
propounded written discovery to address the supplementary payments
issue and then filed the instant motion for summary judgment.
Mulvey sought to depose a BITCO representative and BITCO opposed
the request.  The court denied BITCO's motion for a protective
order.  The parties were given a deadline to supplement their
briefs on the supplementary payments issue should the corporate
deposition yield information pertinent to BITCO's pending motion
for summary judgment.  Prior to the deposition, the parties sought
the court's guidance regarding the scope of the deposition.  See
Doc. No. 228.  Whereupon, by telephonic conference, the court
confirmed that the scope of the deposition was limited to the
issue of Mulvey's entitlement to a defense under the supplementary
payments provision.  On September 28, 2015, Mulvey filed a Second
Supplemental Response to the pending motion for summary judgment.
(Doc. No. 229).  The motion for summary judgment is ripe for
ruling.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be
> rendered forthwith if the pleadings,
> depositions, answers to
> interrogatories, and admissions on
> file, together with the affidavits,
> if any, show that there is no
> genuine issue as to any material
> fact and that the moving party is
> entitled to a judgment as a matter
> of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in
> support of the plaintiff's position will be
> insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff.
> The judge's inquiry, therefore, unavoidably asks

11

> whether reasonable jurors could find, by a
> preponderance of the evidence, that the plaintiff
> is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If

the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 250-51.

### Analysis

At the outset, the court feels it important to reiterate

the parties' responsibility, especially when represented by

counsel, to raise all issues for decision to the court in a

timely manner.  As the Supreme Court has explained:

> In our adversary system, in both civil and
> criminal cases, in the first instance and on
> appeal, we follow the principle of party
> presentation.  That is, we rely on the parties to
> frame the issues for decision and assign to
> courts the role of neutral arbiter of matters the
> parties present.  To the extent courts have
> approved departures from the party presentation
> principle in criminal cases, the justification
> has usually been to protect a pro se litigant's
> rights.  See Castro v. United States, 540 U.S.
> 375, 381-383, 124 S. Ct. 786, 157 L. Ed.2d 778
> (2003).  But as a general rule, "[o]ur adversary
> system is designed around the premise that the
> parties know what is best for them, and are
> responsible for advancing the facts and arguments
> entitling them to relief."  Id., at 386, 124
> S.Ct. 786 (SCALIA, J., concurring in part and
> concurring in judgment).  As cogently explained:

>> "[Courts] do not, or should not, sally
>> forth each day looking for wrongs to
>> right.  We wait for cases to come to
>> us, and when they do we normally decide
>> only questions presented by the
>> parties.  Counsel almost always know a
>> great deal more about their cases than
>> we do, and this must be particularly

> true of counsel for the United States,
> the richest, most powerful, and best
> represented litigant to appear before
> us." <u>United States v. Samuels</u>, 808
> F.2d 1298, 1301 (8th Cir. 1987) (R.
> Arnold, J., concurring in denial of
> reh'g en banc).

<u>Greenlaw v. U.S.</u>, 554 U.S. 237, 243-44 (2008) (internal footnotes

omitted); <u>see also</u> <u>United States v. Layne</u>, 192 F.3d 556 (6th Cir.

1999) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are

deemed waived. . . .").

I.      *Waiver*

        Given Mulvey's failure to raise the issue in the district

court until oral argument on the third round of summary judgment

motions, BITCO argues that Mulvey has waived any right to claim

coverage under the Supplementary Payments provision.  BITCO's

argument has merit.

        As the record will reflect, throughout the course of this

litigation, Mulvey has advanced several different arguments as to

why it is entitled to coverage under the BITCO policy.  However,

Mulvey never raised the supplementary payments issue in any brief

or other filing in this court.  Nor did it seek to amend its

complaint to add the supplementary payments provision as a method

of recovery.  Mulvey only invoked the supplementary payments

provision as a right to relief at oral argument on February 13,

2013.  In response to a question of the court as to what Mulvey

would get if the subcontract between Mulvey and DCI/Shires was an insured contract, Mulvey responded

Mulvey:        . . . You get your reasonable defense fees after the time of tender of the defense.  I think reading the policy and talking in the Bituminous policy - - in fact, Your Honor, to reference it specifically, the acts or underlying policy, it talks about supplemental payment, page 6 and 7 of the policy. When you talk about the duty to defend the insured's indemnitee, the policy provides that, you know, if it is indeed an insured contract, and we do X, Y and Z, which is basically allow them to take over the defense of the case, and they don't do that, our argument is that the obligation is for the defense costs after tender.  And then if they settled the case, and they gave them that opportunity, "Hey, you need to take over; we believe you're the primary insurer, you take over the case," and they refused to take on that defense, they are entitled to those damages as well.

                                    * * *

Court:         Do you want to say anything else?

Mulvey:        No, your Honor.  Hopefully, you've gotten my argument, and I do believe the policy of Bituminous is in the record with the court, and I just wanted to point out the section dealing with supplemental payments, because we did not - - based on some of the questions I had, I think that's another part of the policy this court should review.

                                    * * *

Mulvey:        . . . And, in fact, the Bituminous policy contemplates that in its very language, and about the fact is that those obligations only extend up to the obligation to defend the insured's indemnitee - not to defend the insured, the insured's indemnitee - and to pay attorney's fees and reasonable and necessary litigation expenses.  This is part of their coverage under the policy.

               . . . I do believe that there is another vehicle, a narrow one as it may be, that if we meet the certain

14

|  |  |
|---|---|
|  | conditions, that we are entitled to that duty to defend that was owed to us long ago in the Blevins case. |
| Court: | And you say you meet all the conditions contained in the provision? |
| Mulvey: | Well, certainly, Your Honor, I think the conditions are set forth in there is that - - well, you have to understand, we write letters to tender the defense once, and then again, it's basically we get no response.  But it certainly is a case where the suit is against the insured - - the indemnitee and the insured, and it's an insured contract, which is the number one condition that has to be met |
| Court: | There is a whole bunch of conditions here, and you say you meet them all? |
| Mulvey: | Well, I certainly believe at this point we've met them all.  I think if you don't raise those issues, but we tender not once, but twice, I certainly believe you do waive them all as relates to that. So I do think the policy provides to what we're talking about here. |
| Court: | Okay. |
| Mulvey: | Thank you, Your Honor. |
| BITCO: | Your Honor, very briefly, normally, I wouldn't rise to address anything further – |
| Court: | Well, I normally don't let you rebut a rebuttal, but I'll - - go ahead. |
| BITCO: | Well, now we have yet a new argument that the supplemental coverage is where their rights arise. I just - - I read it when they filed it, I read it last night, and I just read it again, and that's their brief in support of the motion that they've presented today.  I don't see a single word in their brief about the supplemental coverage.  That's something entirely new, not heretofore argued, not heretofore briefed.  And I have to suggest to the court that if that's the theory they're pursuing, that's yet the fourth different try. |

15

The supplemental coverage addresses an entirely - - it's a supplemental benefit available to the policyholder which, under certain circumstances, is designed to avoid involving the policyholder in litigation.  That absolutely gives a stranger to the policy no rights whatsoever.  And if the court wants a supplemental brief on supplemental benefits and what they entail, I'll be happy to supply it.

Court:      Well, how about that, Mr. McMillan?  Is this a new theory?

Mulvey:     Your Honor, you know what, it's not a new theory in the sense of this:  Where the issue became is the court was asking where is it that somehow, by insured contract, what benefits are there.  And I realized that the court needs to see some stuff in the policy, because no one has really said what the policy says.  I have no problem with this, but my - - if you want a supplemental brief.  I don't think it's necessary.

                              *  *  *

BITCO:      I think the answer was, yes, it's a new argument.

Court:      Okay.

Mulvey:     Your Honor, when you get new defenses, you got new arguments, so - -

Transcript of Motions Hearing, February 13, 2013, at pp. 6-7, 13, 29-32 (Doc. No. 200).

        As the foregoing excerpt shows, it is undisputed that Mulvey did not raise the supplementary payments issue in a timely fashion.  As such, this court was under no obligation to consider it.  See United States v. Warren, 86 F. App'x 974, 2004 WL 179211, *3 (7th Cir. Jan. 22, 2004)("Warren did not raise this argument in his motion to withdraw; his counsel raised it for the

first time at the hearing on the motion, so the issue might be forfeited."); Foos v. Taghleef Indus., Inc., No. 2:13-cv-00438-JMS-WGH, 2015 WL 5567176, *14 (S.D. Ind. Sept. 22, 2015) ("By making the argument that his perceived disability was alcoholism for the first time at the hearing, Mr. Foos has waived the argument."); LaFata v. Dearborn Heights School Dist. No. 7, Civil Case No. 13-cv-10755, 2013 WL 6500068, *8 (E.D. Mich. Dec. 11, 2013) ("Generally, courts will not consider theories or arguments raised for the first time at oral argument."); Cataphora Inc. v. Parker, No. C09-5749 BZ, 2012 WL 13657, *3 n.6 (N.D. Cal. Jan. 4, 2012) ("Inasmuch as this argument was raised for the first time during the hearing and is not mentioned in Defendants' opposition, I decline to consider it."); Richards v. LPN Lumpkin, No. 4:10-cv-00245-BRW-JTK, 2011 WL 1740033, *3 (E.D. Ark. Apr. 6, 2011) ("Plaintifff's remaining complaints against Defendants which were raised for the first time at the hearing . . . were not previously raised in his Complaint or other pleadings, and therefore, are not properly before this Court."); Hoover v. Trent, Civil Action No. 1:07CV47, 2008 WL 2308079, *13 (N.D.W. Va. June 4, 2008) ("The Court first notes that this issue was raised for the first time at the hearing and is therefore not properly before the Court."); In re Viagra Prods. Liability Litig., 658 F. Supp.2d 936, 942, n. 5 (D. Minn. 2009) (noting that argument raised for the first time at the hearing is not

properly before the court); <u>White v. FedEx Corp.</u>, No. C04-00099 SI, 2006 WL 618591, *2 (N.D. Cal. Mar. 13, 2006) ("In addition, throughout oral argument plaintiffs' counsel raised arguments and cited evidence that were not presented in any of their multiple opposition briefs.  The Court will not consider any arguments or evidence raised for the first time at the hearing."); <u>cf.</u> <u>Mosteller v. Colvin</u>, No. 11 C 1640, 2014 WL 4403373, *14 (N.D. Ill. Aug. 28, 2014) ("It is well settled that arguments raised for the first time in a reply brief are waived.").[5]

Nevertheless the court is inclined to agree with Mulvey that the Fourth Circuit's Order in this case, although it did not consider the issue of waiver, implicitly finds that the issue is not waived.

II.    *Supplementary Payments*

---

[5] Likewise, the issue of whether Mulvey was entitled to a defense under the supplementary payments provision of the policy should have been found to be waived in the appeals court as it was only raised for the first time in plaintiffs' reply brief. <u>See</u> Federal Rule of Appellate Procedure 28(a)(8) (stating that an "appellant's brief must contain . . . the argument, which must contain . . . the argument, which must contain: (A) appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and (B) for each issue, a concise statement of the applicable standards of review. . . ."); <u>United States v. One 1971 Mercedes Benz 2-Door Coupe</u>, 542 F.2d 912, 915 (4th Cir. 1976) ("Questions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances."); <u>United States v. Drennan</u>, 121 F.3d 701, 1997 WL 543379, *5 (4th Cir. Sept. 5, 1997) ("An appellant's opening brief must raise all issues on appeal and additional issues may not be asserted for the first time in the reply brief.").

With respect to the nature of supplementary payments coverage in a Commercial General Liability (CGL) policy:

> The supplementary payments section of a CGL policy addresses payments that the insurer agrees to make to the insured in connection with a claim or suit.  These costs typically are in excess of the limits of insurance.  Common categories of payments include expenses incurred by the insurer, certain costs taxed against the insured in connection with a suit or judgment, pre-judgment and post-judgment interest, and cost of bonds to release attachments.  Common supplementary payments provision language obligates the insurer to pay all expenses incurred in the defense of the insured and all costs taxed against the insured, which shall be in addition to the applicable policy limits.

4 Philip L. Bruner and Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 11:12.50 (2015).  Of the duty to defend an insured's indemnitee under the supplementary payments coverage, Bruner and O'Connor go on to explain that "[a]nother common feature of supplementary payments provisions addresses the conditions under which the insurer will defend an indemnitee of the insured. . . .  Because the defense of the indemnitee is undertaken as supplementary payments, these payments do not reduce the limits of insurance."  4 Philip L. Bruner and Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 11:64.50 (2014).

However, as the foregoing makes clear, supplementary payments coverage is provided as a benefit for the insured, not a

19

stranger to the insurance contract.  Significantly, it does not make a third party indemnitee an insured under the policy.

> [A] supplementary payments provision d[oes] not demonstrate an intent by the defendant insurer to afford the plaintiff coverage solely on the basis that it is an indemnitee of the named insured, in the absence of the plaintiff's addition as "an insured" under Section II of the subject policy pursuant to the additional insured endorsement. . . . Liability coverage under the policy is afforded by Section I, not the supplementary payments provision.  Therefore [plaintiff]'s status as an indemnitee does not operate to confer upon it status as an additional insured, and it is, thus, not entitled to liability coverage under the subject policy pursuant to the supplementary payments provisions.

Hargob Realty Assoc., Inc. v. Fireman's Fund Ins. Co., 73 A.D.3d 856, 858, 901 N.Y.S. 2d 657 (2nd Dept. 2010); see also Western Heritage Ins. Co. v. Century Surety Co., 32 F. Supp.3d 443, 451-52 (S.D.N.Y. 2014) ("The Supplementary Payments provision does not provide liability coverage to Empire or transform Empire into an `insured' under the Western policy.  Instead, if all of the conditions of the provision are met, Western will pay the defense costs of a contractual indemnitee — Empire — as a `Supplementary Payment[ ],' without `reduc[ing] the limits of insurance.'  If any of the conditions are not met, the provision no longer applies.  Western may still pay Empire's defense costs, but it will reduce the limits of insurance available to NSBP.").

The supplementary payments portion of the Bituminous policy reads in pertinent part as follows:

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

21

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments . . . [S]uch payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Exhibit D to Amended Complaint.

The subcontract in this case, which is the vehicle that plaintiffs claim controls their entitlement to a defense under the supplementary payments provision, provided that

To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect and Contractor and all of their agents employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or arising from performance of Subcontractor's Work under this Agreement, provided such claim, damage loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, to the extent caused in whole or part by any neglect, act or omission of Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder.  This obligation of indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers' or workmen's

22

compensation acts, disability benefit acts or
other employee benefit acts.

Exhibit B to Amended Complaint, p. 4.

It has been observed that "[i]n the majority of
contractual indemnity claims, these conditions of the
Supplementary Payment section . . . likely will not be met and
thus, any payment of defense costs of an indemnitee usually will
deplete the limits of the CGL policy." Robert H. Etnyre, Jr. &
Marcus R. Tucker, <u>Insurance Coverage Issues Raised by Typical
Contractual Indemnity and Additional Insured Provisions in Oil
and Gas Contracts</u>, 57 The Advocate (Texas) 45, 47 (2011).[6]

The supplementary payments provision of the policy
obligates BITCO to defend an indemnitee of the named insured, in
this case, DCI/Shires, but only if certain specified conditions
are met. Mulvey contends that all the conditions required to
merit a defense under the supplementary payments provision have
been met. BITCO disagrees. In the instant case, the undisputed
evidence of record shows that these conditions were not met.

---

[6] Acknowledging the uphill battle an indemnitee faces in
satisfying the conditions required for a duty to defend to arise
under the supplementary payments provision, one commentator
suggested that the difficulty "can be avoided by simply naming
the indemnitee as an additional insured under the indemnitor's
policy." Scott C. Turner, <u>Insurance Coverage of Construction
Disputes</u> § 10:14 (2015).

A.   *Standing*

BITCO argues that plaintiffs, as strangers to the policy, have no standing to assert a direct claim to the benefits of the supplementary payments provision.  According to BITCO, the supplementary payments provision is intended to benefit an insured, not an indemnitee.  The court is inclined to agree.  As it stated in its Memorandum Opinion and Order of April 2, 2013,

> The "insured contract" provision in the
> Bituminous policy merely affords coverage to the
> insured; it does not extend coverage to third
> parties. . . .  Even assuming that the
> subcontract between Mulvey and DCI is an insured
> contract within the definition of the Bituminous
> Policy, it does not make Mulvey an additional
> insured under that policy.  Rather, it only
> obligates Bituminous to provide coverage to DCI
> for any damages DCI incurs as a result of the
> subcontract.  For example, if Mulvey had seen the
> New York arbitration to completion and received
> an award of damages against DCI, Bituminous would
> be liable to DCI for those damages.

Memorandum Opinion and Order of April 3, 2013 (Doc. No. 192).
The foregoing reasoning applies with equal force to Mulvey's backdoor attempt to acquire a defense under the supplementary payments provision of the policy.  See Western Heritage Ins. Co. v. Century Surety Co., 32 F. Supp.3d 443, 451 (S.D.N.Y. 2014) ("The Supplementary Payments provision does not provide liability coverage to Empire or transform Empire into an `insured' under the Western policy."); Hargob Realty Assoc., Inc. v. Fireman's Fund Ins. Co., 73 A.D.3d 856, 858, 901 N.Y.S. 2d 657 (2nd Dept. 2010) ("Therefore [plaintiff]'s status as an indemnitee does not

24

operate to confer upon it status as an additional insured, and it is, thus, not entitled to liability coverage under the subject policy pursuant to the supplementary payments provisions."); see also Berg v. Gulf Underwriters Ins. Co., 313 Wis.2d 522, 2008 WL 2522341, *7 (Wis. App. June 26, 2008) ("Reading the `defense of an indemnitee' clause in context with the provisions for coverage and definition of an `insured agreement,' we conclude the primary purpose of this clause is to benefit both the insured and the insurer, and the indemnitee is only an incidental beneficiary.").

Notwithstanding the foregoing, given the Fourth Circuit's order in remanding the case to this court, the court concludes that plaintiffs are correct in asserting that the appeals court has already decided, at least implicitly, that Mulvey has standing to pursue relief under the supplementary payments provision. Therefore, the court will proceed to determine whether Mulvey meets the criteria for entitlement to a defense under the supplementary payments provision.

B.    *Insured Contract*

According to plaintiffs, the subcontract agreement between Mulvey and DCI/Shires is an insured contract within the meaning of the policy and, therefore, they are entitled to coverage under the policy. Bituminous contends that the subcontract is not an insured contract and, therefore, no defense is owed under the supplementary payments provision.

25

The policy defines an "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for `bodily injury' or `property damage' to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

Bituminous argues that the subcontract agreement between Mulvey and DCI/Shires is not an insured contract within the meaning of the policy because DCI did not assume the tort liability of Mulvey but, rather, only agreed to assume its own liability.  Several courts, in construing nearly identical language in indemnification agreements, have concluded that such agreements are not "insured contracts" within the meaning of the policy.

In rejecting a plaintiff's contention that "[i]t is basic insurance law that a contractual indemnity obligation is an `insured contract' under the indemnitor's commercial general liability policy," Judge Copenhaver of this court emphasized that a court must look to the "express contractual language" of a policy which defines an "insured contract."  <u>Energy Corp. of America v. Bituminous Casualty Corp.</u>, 543 F. Supp.2d 536, 546 (S.D.W. Va. 2008).  In the <u>Energy Corp.</u> case, the indemnity

26

language provided in pertinent part that "Contractor shall be
liable, and shall release, indemnify, defend and hold Operator
harmless, for any bodily injury to Contractor's . . . personnel,
. . . solely caused by Contractor's negligence or willful
misconduct."  Id. at 539.  Judge Copenhaver concluded that the
contract at issue was not an insured contract within the meaning
of the relevant policy because, under the foregoing language, the
Contractor did not "assume the liability of anyone other than
itself" and, therefore, it is not contract in which the
Contractor has assumed the tort liability of another party.  Id.
at 546.

Similarly, in this case, DCI/Shires assumed only that
liability "arising out of or arising from performance of
[DCI/Shire]'s Work" under this subcontract.  See also Memorandum
Opinion and Order of March 31, 2011.  As such, it did not assume
the liability of anyone other than itself and, therefore, the
subcontract herein does not meet the policy's definition of an
insured contract.[7]

C.  *Obligation to defend*

According to the policy, BITCO's "obligation to defend,
or the cost of the defense of," Mulvey must be assumed under the

---

[7] Indeed, under New York law, which governs the
subcontract herein, any agreement by DCI/Shires to indemnify
Mulvey for Mulvey's own negligence would be void and
unenforceable.  New York General Obligations Law § 5-322.2(1);
Eberl v. FMC Corp., 872 F. Supp.2d 250, 262-63 (W.D.N.Y. 2012).

27

subcontract.  BITCO contends that, because there is no explicit duty to defend contained within the subcontract, a duty to defend under the supplementary payments provision is not triggered.

There is a difference between an obligation to reimburse legal costs pursuant to an indemnity agreement and an explicit duty to defend.  As one court explained:

> A duty to defend is "independent of the underlying obligation to indemnify." Miley, 41 Mass. App. Ct. at 34, 668 N.E.2d at 372 (citing Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 786-787, 667 N.E.2d 907 (1996), rev. denied, 423 Mass. 1108, 671 N.E.2d 951 (1996)); see also McSweeney, 2000 WL 1511654 at *4 (citing Miley, 41 Mass. App. Ct. at 32-34, 668 N.E.2d 369) ("a contractual agreement to indemnify which includes a hold harmless provision and the payment of expenses, including legal fees, still does not impose an independent duty to defend."); Dembeck v. Hamilton Co., Inc., No. 950208A, 1998 WL 1181723, *2 (Mass. Super., Oct. 14, 1998)("A duty to defend clause within an indemnification agreement is independent of and broader than the duty to indemnify.").

> In the case at bar, it is clear that there is an explicit duty to defend provision - Article 11.1.2 - which states that McDonald shall defend Beacon Skanska for all claims brought by third parties and shall reimburse Beacon Skanska for all legal costs incurred in connection with defending the claims of third parties or in enforcing the indemnity provision.

Ferreira v. Beacon Skanska Const. Co., Inc., 296 F. Supp.2d 28, 32 (D. Mass. 2003).  As to the consequences of the difference, another court explained:

> Where an agreement provides for indemnity against liability under specified circumstances, the party seeking indemnity ordinarily must prove

28

that he is in fact liable under the particular
circumstances described in the agreement.  If he
settles without a judicial finding of liability,
he must normally prove the existence of his
liability in a suit against the indemnitor.  <u>In
the Toledo</u>, 122 F.2d 255, 257 (2d Cir.), <u>cert.
denied</u>, 314 U.S. 689, 62 S. Ct. 302, 86 L. Ed.
551 (1941).  However, there are exceptions to
this general rule.

One such exception is where the indemnitor
has a duty to defend.  Such a duty applies to any
claim of the type listed in the indemnification
agreement, even if the claim is without merit.

<u>Carey Transp., Inc. v. Greyhound Corp.</u>, 80 B.R. 646, 652

(S.D.N.Y. 1987).

The supplementary payments provision of the policy

requires that an obligation to defend appear in the same "insured

contract" - - in this case, the subcontract.  No explicit duty to

defend appears in the subcontract.  Without such an express

contractual undertaking, this requirement of the supplementary

payments provision was not met.  <u>Cf.</u> <u>Martin K. Eby Const. Co.,

Inc. v. One Beacon Ins. Co.</u>, 926 F. Supp.2d 1237, 1240 and 1245

(D. Kan. 2013) (holding that indemnification agreement wherein

contractor agreed "indemnify and hold harmless [indemnitee]. . .

against any and all damages, claims, demands, suits, and judgment

costs including attorney's fees and expenses" did not trigger

duty to defend because indemnity agreement did not obligate

indemnitor "to defend or pay for the defense of" indemnitee);

<u>Fisher v. Harvard Real Estate, Inc.</u>, No. 974016, 2000 WL

33170930, *3 (Mass. Super. Nov. 11, 2000) ("Even if the sub-

29

contract required that Brisk pay for Spinelli's attorneys fees,
Brisk would have no duty to defend Spinelli because the duty to
defend must be explicit in the contract.  The inclusion of
attorneys fees as an expense for which there shall be indemnity
does not automatically impose a duty to defend similar to that
inherent in an insurance contract.") (internal citations and
quotations omitted).

> D.  *Conflict between the interests of insured and
>     indemnitee*

In order for an obligation to arise on the part of
Bituminous to provide a defense to Mulvey under the supplementary
payments provision, it had to appear <u>to BITCO</u> that there was no
conflict between the interests of  Mulvey and DCI/Shires <u>based on
what BITCO knew</u> about the allegations in the Blevins lawsuit and
the facts surrounding it.  Mulvey insists there was no conflict.
The court disagrees.

The Blevins lawsuit was filed on February 27, 2004.  <u>See</u>
Mulvey's Supplemental Responses to Interrogatories and Requests
for Production of Documents (Doc. No. 213-8).  An Amended
Complaint was filed on March 16, 2004.  <u>See</u> <u>id.</u>  On May 3, 2004,
Mulvey filed its Answer to the Amended Complaint, as well as a
cross-claim against DCI/Shires.  In that pleading, Mulvey stated:

> 6.  The claims and demands contained in the Plaintiffs'
>     Amended Complaint are claims and demands for the
>     death of a person allegedly arising out of or from
>     and attributable, directly or indirectly, to DCI
>     Shires, Inc.'s work under the Agreement.

       7.   Mulvey hereby demands that DCI Shires, Inc.
indemnify and hold Mulvey harmless from and against
Plaintiffs' claims and demands made in the instant
suit all pursuant to th express indemnity obligation
contained in the subcontract.

See <u>id.</u> and attachments thereto (Doc. No. 213-8).

    DCI/Shires filed its Answer to Mulvey's Cross-Claim on

May 17, 2004, in which it averred:

**<u>SECOND DEFENSE</u>**

    Mulvey Construction, Inc. is guilty of
negligence and fault which proximately caused or
proximately contributed to the Plaintiff's claim
for damages thereby barring, in whole or in part,
any recovery herein.  Alternatively the
negligence and fault of Defendant Mulvey
Construction, Inc. must offset the alleged
negligence of DCI Shires, Inc., if any, which
negligence is denied.

**<u>NINTH DEFENSE</u>**

* * *

    2.   In response to the allegations contained
in Paragraph five (5) of the Cross-Claim,
Defendant DCI Shires, Inc. admits that the
Subcontract Agreement contains the language set
forth in paragraph 9 of the Subcontract
Agreement, but denies any negligence on its part
or that the Indemnity Agreement has been
triggered, or is otherwise applicable to the
allegations in the Plaintiff's Amended Complaint.

    3.   In response to the allegations contained
in Paragraph six (6) of the Cross-Claim,
Defendant DCI Shires, Inc. admits that the claims
and demands contained in the Plaintiff's Amended
Complaint are claims and demands for compensation
for the death of a person.  It is unclear whether
those claims and demands allegedly arise out of
or from or are attributable, directly or

31

indirectly, to DCI Shires, Inc's work under the Agreement.

Id.

On September 1, 2004, after Mulvey's cross-claim and DCI/Shires' Answer thereto had been filed, Mulvey wrote a letter to BITCO tendering its defense and demanding indemnity for the first time.  See Exhibit B to BITCO's Motion for Summary Judgment (Doc. No. 213-2).  This letter does not mention the supplementary payments provision.

Frankly, the conflict as of September 1, 2004 between the interests of Mulvey and DCI/Shires is obvious.  Mulvey had filed a cross-claim against DCI/Shires.  At that point, it was impossible for them to be represented by the same counsel. Therefore, the requirement that, from BITCO's point of view, no conflict appears to exist cannot be satisfied.  See Nordby Const., Inc. v. American Safety Indemnity Co., Case No. 14-CV-04074-LHK, 2015 WL 1737654, *14 (N.D. Cal. Apr. 14, 2015) (no right to a defense for indemnitee under supplemental payments provision where plaintiff filed a cross-claim for indemnity against insured "which would have made it impossible for the same counsel to represent both parties" and, therefore, plaintiff could not satisfy conditions for a defense as a contractual indemnitee); Penn Nat'l Ins. v. HNI Corp., 482 F. Supp.2d 568, 610 (M.D. Pa. 2007) (holding that indemnitee not owed a defense where there was conflict between insured and indemnitee, as

32

demonstrated by fact that parties had, among other things, filed cross-claims against each other for contribution and indemnification); see also Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co., 611 F.3d 339, 353 (7th Cir. 2010) (finding no error in district court's determination that a conflict of interest between insured and indemnitee such that indemnitee could not satisfy preconditions to insurer providing a defense to indemnitee).

E.   *Indemnitee obligations*

As a condition to a defense under the supplementary payments provision, Mulvey had to agree in writing to: (a) cooperate with BITCO in the investigation, settlement or defense of the Blevins lawsuit; (b) immediately send BITCO copies of any demands, notices, summonses or legal papers received in connection with the Blevins lawsuit; (c) notify any other insurer whose coverage is available to the indemnitee; and (d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee.

The evidence of record confirms that Mulvey never did this.  In discovery, BITCO asked Mulvey to:

Produce and attach a copy of every document in which Mulvey agreed to any of the following:

(a) To cooperate with Bituminous in the investigation, settlement, or defense of the underlying wrongful death action;

33

>   (b) Forwarding copies of any demands, notices, summonses, or legal papers received in connection with the underlying wrongful death action;
>
>   (c) Any document in which Mulvey agreed with Bituminous that Mulvey would notify any other insurer whose coverage might be available to Mulvey; and
>
>   (d) Attach any document in which Mulvey agreed to cooperate with Bituminous with respect to coordinating other applicable insurance that might be available to Mulvey with respect to the underlying wrongful death action.

Exhibit H to BITCO's Motion for Summary Judgment (Doc. No. 213-8). Mulvey conceded that it had no such document(s). See id. ([N]o responsive documents exist because Bituminous, through its retained counsel, never agreed to assume the defense."). Therefore, Mulvey did not satisfy the condition.

Likewise, in order for the supplementary payments provision to apply, Mulvey was required to "[p]roduce and attach copies of all documents in which Mulvey provided Bituminous with written authorization to: (a) Obtain records and other information from Mulvey related to the underlying wrongful death action; and/or (b) Attach any document in which Mulvey authorized Bituminous to conduct and control the defense of Mulvey in the underlying wrongful death action." Id. Once again, Mulvey never provided this written authorization. See id. ("no responsive documents exist").

Recognizing that it did not satisfy a number of the requirements of the supplementary payments provision, Mulvey

34

instead blames BITCO for its lack of diligence. Understood correctly, Mulvey's argument is that, even though Mulvey never claimed an entitlement to a defense under the supplementary payments provision, BITCO was required to analyze whether the provision applied and, if not, provide the reasons therefor. Furthermore, in the event BITCO failed to make a determination as to whether Mulvey was entitled to a defense under the provision even though Mulvey never invoked the provision, this court should find that BITCO is estopped from arguing that Mulvey did not satisfy the requirements for the provision to apply. For obvious reasons, the court will decline Mulvey's invitation to do so.

### Conclusion

The appeals court directed this court to determine "whether the requirements of th[e supplementary payments] provision have been met and whether, specifically taking the provision into consideration, Bituminous had a duty to defend Mulvey in the underlying lawsuit." Mulvey Const. Co., Inc. v. Bituminous Casualty Corp., 571 F. App'x 150, 161 (4th Cir. May 7, 2014). The court finds that the conditions have not been met and, therefore, BITCO had no duty to defend Mulvey in the Blevins lawsuit.

Mulvey's argument with respect to its entitlement to coverage under the supplementary payments provision of the policy at this late juncture is the legal equivalent of a "Hail Mary"

35

pass.  However, for the myriad of reasons discussed above,

Mulvey's pass falls incomplete.  Accordingly, BITCO's motion for

summary judgment is GRANTED.  The Clerk is directed to send

copies of this Memorandum Opinion and Order to all counsel of

record.

**IT IS SO ORDERED** this 22nd day of October, 2015.

ENTER:

David A. Faber
Senior United States District Judge

36